

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 8, 2023

**BY ECF**
The Honorable Jennifer H. Rearden
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. John Petrucelli*, 02 Cr. 99 (JHR)

Dear Judge Rearden:

      The Government respectfully submits this letter in opposition to defendant John Petrucelli's *pro se* motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "Motion"). (Dkt. 109).[1] The Motion should be denied because Petrucelli, who is serving a life sentence for murder in aid of racketeering, has not demonstrated extraordinary and compelling circumstances justifying his release, and early release is not warranted under the 3553(a) factors. *See* 18 U.S.C. § 3553(a).

**I.   Background**

      **A.  Offense Conduct**

      On June 20, 1995, Petrucelli, then 25 years old, killed a 17-year-old boy, Paul Cicero, by stabbing him with a knife. At the time he murdered Cicero, Petrucelli was a member of the Tanglewood Boys, a violent gang that operated in Yonkers and the Bronx whose members were proteges of the Luchese and Genovese crime families. (PSR ¶¶ 5-6).

      Shortly after midnight on June 20, 1995, Petrucelli and other members of the Tanglewood Boys were gathered at a park in the Bronx. (PSR ¶ 6). The group became involved in a confrontation with Gene Gallo, a resident of the neighborhood. (*Id.*). Petrucelli threw a beer bottle at Gallo, who left the area and returned approximately 30 to 45 minutes later, accompanied by Michael Zanfardino, a Genovese Family associate. (*Id.*). Zanfardino shot Darin Mazzarella,

---

[1] "Mot." refers to Petrucelli's motion for compassionate release; "PSR" refers to the Presentence Investigation Report prepared by the United States Probation Office ("Probation Office") in connection with Petrucelli's sentencing; "Sent. Tr." refers to the transcript of Petrucelli's February 7, 2003 sentencing; and "Dkt." refers to an entry on the District Court's docket for this case.

another member of the Tanglewood Boys, as Mazzarella went to Petrucelli's car to retrieve a gun that was concealed there. (PSR ¶ 7). Mazzarella survived the shooting. (PSR ¶ 8).

Paul Cicero was Gallo's cousin. (PSR ¶ 9). At Gallo's request, Cicero—who was out on a double date that night with a friend and their two dates—traveled to the park where the beer bottle incident had taken place. (*Id.*). Cicero reported to Gallo that it was too dark to see anyone in the park and went to his friend's house to spend the night. (PSR ¶¶ 9-10).

Later that night, as Cicero was walking along the sidewalk in the vicinity of his friend's house, Petrucelli got out of a car, engaged Cicero in a brief and animated discussion, and lunged at Cicero, stabbing him in the side. (PSR ¶ 11). After Petrucelli thrust his knife into Cicero, Petrucelli told others that he had said to Cicero, "Take this. Give it to your cousin." (PSR ¶ 13). Cicero clutched his side and staggered to the nearby home of a friend, whose father called for medical assistance and administered first aid. (PSR ¶ 11). Cicero died later that morning at approximately 5:01 a.m. (PSR ¶ 12).

Petrucelli was arrested on January 31, 2002, more than six and a half years after Cicero's murder. (PSR ¶ 22).

### B. Procedural History

On November 4, 2002, a jury convicted Petrucelli of one count murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1).[2]

On February 7, 2003, Judge Griesa sentenced Petrucelli to life imprisonment, as required by the statute of conviction and the applicable Sentencing Guidelines, and directed restitution of $8,000 for Cicero's funeral expenses. (Sent Tr. 13:3-5). At sentencing, Cicero's mother made the following statement:

> He was only 17 years old when you, John Petrucelli, took my son away from me. You left my daughter an only child. 17 years old, he was just a baby. . . . On the night you killed my Pauley, before he walked out of the house, and out of our lives forever, he gave me a kiss and told me, "I love you, mom," for the last time. He had just started dating. He was only 17 years old. He had his whole life in front of him . . . and everything to live for. Nothing will ever be the same for us. You have left my family with a huge hole in our hearts.

(Sent. Tr. 7:20-8:14). Prior to imposing the sentence, Judge Griesa acknowledged Cicero's mother's statement and stated that the crime of "killing . . . a young man . . . speaks for itself." (Sent. Tr. 10:24-11:2). The Court then stated:

> I do not deliver lectures at sentences. The one thing I wish to say is that I was present at the trial of course. I presided at the trial. I heard the evidence that came from the witness

---

[2] The underlying state offense was second degree murder, in violation of New York Penal Law § 125.25.

> stand. I saw the evidence that came in the form of exhibits. I saw the evidence that came in the form of testimony . . . . I would like to say for this courtroom, for the people who are here, that I believe that the jury's verdict was absolutely justified. I believe that the government's proof showed that Mr. Petrucelli committed this crime and that the proof was beyond a reasonable doubt.

(Sent Tr. 11:3-17).

The Second Circuit affirmed Petrucelli's conviction on appeal, *United States v. Petrucelli*, 97 Fed. App'x 355 (2d Cir. 2004), and the Supreme Court denied certiorari. *Petrucelli v. United States*, 543 U.S. 993 (2004). Petrucelli has filed two petitions pursuant to 28 U.S.C. § 2255, which were denied in 2009 and 2015, respectively. (Dkts. 62, 100).

On June 21, 2023, the case was reassigned to Your Honor after Petrucelli filed the instant Motion. (Dkts. 109, 110).

### C. Current Custody Status

Petrucelli is currently incarcerated at FCI Allenwood Medium. Because of his sentence to life imprisonment, he does not have a projected release date. As of July 30, 2023, there are zero active cases of COVID-19 among FCI Allenwood Medium's 1,285 inmates and zero active cases among the facility's staff. *See* Federal Bureau of Prisons ("BOP"), *BOP COVID-19 Statistics*, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited August 5, 2023); Federal Bureau of Prisons, *FCI Allenwood Medium*, https://www.bop.gov/locations/institutions/alm/ (last visited August 5, 2023).

## II. Applicable Law

Under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, the court "may not modify a term of imprisonment once it has been imposed," except that:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id*.  The Sentencing Commission, prior to the First Step Act's amendment of Section 3582, had promulgated a policy statement on compassionate release, U.S.S.G. § 1B1.13.  The Second Circuit, however, has construed this policy statement as applicable only to compassionate release motions brought by the Bureau of Prisons ("BOP"), not those brought by defendants.  *See United States v. Brooker*, 976 F.3d 228, 234-36 (2d Cir. 2020).

Thus, in instances such as this, involving a motion brought by the defendant rather than by the BOP, there are three prerequisites for granting a compassionate release motion.  *First*, the defendant must have exhausted his administrative rights.  *See* 18 U.S.C. § 3582(c)(1)(A).  *Second*, the court must find that "extraordinary and compelling reasons warrant" a reduction of sentence.  18 U.S.C. § 3582(c)(1)(A)(i).  Even where this high bar is met, it is merely "[t]he threshold question." *United States v. Daugerdas*, 613 F. Supp. 3d 807, 809 (S.D.N.Y. 2020).  And *third*, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and determine that any reduced term of imprisonment would result in a sentence that is sufficient to accomplish the law's mandate to, among other things, "reflect the seriousness of the offense, . . . promote respect for the law, and . . . provide just punishment for the offense."  18 U.S.C. §§ 3582(c)(1)(A); 3553(a)(2)(A).  As the proponent of the motion, the defendant bears the burden of proving that he is entitled to the requested relief under Section 3582.  *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction." (citing *Butler*)); *United States v. Givens*, No. 14 Cr. 546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

**III.    Discussion**

        **A. The Defendant Has Not Demonstrated Extraordinary and Compelling Reasons to Reduce His Sentence**

Petrucelli requests that his life sentence be reduced to time served of 22 years or, in the alternative, to 35 years.  In support of those requests, Petrucelli's Motion principally makes six arguments.  As set forth below, each of those arguments is meritless.

*First*, Petrucelli argues that his life sentence is "unjust" because the Government offered him "a[n] 18 year plea agreement which Petrucelli refused," and which he claims reflected the Government's assessment of his true culpability.  (Mot. 1).  The possibility that Petrucelli might have received a lower sentence by pleading guilty pursuant to a plea agreement does not distinguish him in any way from the typical defendant who declines a plea offer and is convicted at trial, and does not present extraordinary and compelling circumstances.  To the extent Petrucelli claims that he failed to understand the potential benefits of a plea, that argument was previously made by Petrucelli in a petition pursuant to § 2255 and rejected by Judge Griesa.  (*See* Dkt. 62).

*Second*, Petrucelli argues that he should not have been sentenced under the first degree murder guideline, §2A1.1, because Paul Cicero "was heavily on drugs and [failed] to immediately go to a hospital after the stabbing."  (Mot. 2).  Relatedly, Petrucelli asserts that the first degree murder guideline was applied based on conduct that was not charged or not proven beyond a

reasonable doubt. (*Id.* at 2-3). Petrucelli's troubling attempt to shift responsibility for Cicero's death to Cicero does not cast doubt on the applicability of the first degree murder guideline to Petrucelli's conduct, or otherwise give rise to extraordinary and compelling circumstances. Moreover, Petrucelli's life sentence was required not only by the applicable Guidelines, but also by the statute of conviction itself, 18 U.S.C. § 1959(a)(1), which provided—and provides—that the penalty for murder in aid of racketeering shall be "death or life imprisonment." There has been no change in the law applicable to Petrucelli's sentence since his sentencing.[3] *See, e.g.*, *United States v. Diaz*, No. 90 Cr. 861 (KMW), 2022 WL 17090613, at *4 (S.D.N.Y. Nov. 21, 2022) (holding that, if a murder-in-aid-of racketeering defendant seeking compassionate release "were sentenced today, both the statute and applicable Sentencing Guidelines would require the Court to impose the same sentences he is now serving").

*Third*, Petrucelli writes that "[t]he sentencing Court used 2A2.1 (reckless endangerment enhancement)," which Petrucelli claims is unconstitutionally vague under *Borden v. United States*, 141 S. Ct. 1817 (2021). (Mot. 2). Petrucelli is wrong: he was not sentenced under §2A2.1, which is the attempted murder guideline, and no enhancements were applied to his sentence. Moreover, *Borden* was a statutory interpretation case that has no bearing whatsoever on the viability of the Guidelines pursuant to which Petrucelli was sentenced.[4]

*Fourth*, Petrucelli argues that his life sentence is extraordinary compared to the sentences of similarly-situated defendants. (Mot. 4). As explained above, however, Petrucelli's life sentence is mandated by the statute of conviction, for which the only other statutorily-authorized sentence is the death penalty. Reducing Petrucelli's sentence therefore would *create*, not resolve, a disparity in sentencing for defendants convicted of murder in aid of racketeering. *See, e.g.*, *United States v. Amato*, 48 F.4th 61, 66 (2d Cir. 2022) (affirming district court's rejection of defendant's argument that his life sentence for murder in aid of racketeering created an unwarranted sentencing disparity with similarly situated defendants). The cases cited by Petrucelli in which compassionate release was granted, (*see* Mot. 5-6), none of which involved a sentence reduction below 30 years, serve only to underscore that a reduction of Petrucelli's sentence to just 22 years would be exceptional. *Cf. United States v. Ramsay*, 538 F. Supp. 3d 407 (S.D.N.Y. 2021) (reducing sentence to 30 years for defendant who was 18 years old at the time of the offense and had compelling personal circumstances); *United States v. Monsanto*, No. 87 Cr. 555 (LAP), 2021 WL 355049 (S.D.N.Y.

---

[3] Petrucelli's motion twice cites to "amendment 591" and suggests that this amendment altered the way in which the Guidelines apply to his sentence. Mot. at 2, 3. Amendment 591 to the Sentencing Guidelines, effective November 1, 2000, provided that "initial selection of the offense guideline be based only on the statute (or offense) of conviction rather than on judicial findings of actual conduct." *United States v. Rivera*, 293 F.3d 584, 585 (2d Cir. 2002). Amendment 591 was already in effect when Petrucelli was sentenced, and Petrucelli's sentence did not run afoul of it.

[4] In *Borden*, the Supreme Court held that a criminal offense requiring a mental state of mere recklessness does not constitute a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (providing for mandatory minimum sentence for illegal firearm possession for defendant with three prior convictions for a "violent felony" or serious drug offense). 141 S. Ct. 1817, 1834. The Court's analysis focused on the meaning of the phrase "use of physical force against the person of another" in § 924(e)(2)(B)(i). *Id.*

Feb. 2, 2021) (reducing sentence to 34 years for defendant whose counts of conviction did not include murder); *United States v. Phillips*, 469 F. Supp. 3d 180 (S.D.N.Y. 2020) (reducing sentence to 28 years for defendant whose counts of conviction did not include murder); *United States v. Phillips*, 469 F. Supp. 3d 180, 181 (S.D.N.Y. 2020) (reducing sentence to 33 years for defendant whose counts of conviction did not include murder, but who was sentenced to life imprisonment under the then-mandatory Guidelines for his role in several murders); *United States v. Rodriguez*, 492 F. Supp. 3d 306, 309 (S.D.N.Y. 2020) (reducing sentence to 30 years for defendant at a high risk of severe illness from COVID-19).

*Fifth*, Petrucelli argues that COVID-19 lockdowns are burdensome for inmates. (Mot. 5). Petrucelli does not identify any health conditions that place him at higher risk of severe illness from COVID-19, or any specific lockdown-related protocols or conditions at FCI Allenwood Medium that have made his confinement there particularly difficult. In any event, FCI Allenwood Medium reports zero cases of COVID-19 and is currently at Operational Level 1, which signifies that the COVID-19 medical isolation rate is under 2% and new community positive cases are less than 100 per 100,000 over the last 7 days. *See* COVID-19 Statistics Webpage; COVID-19 Modified Operations Plan & Matrix, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited August 3, 2023) (hereinafter "Operations Webpage"). At Operational Level 1, inmate services such as visitation and law library access have "normal operations," and programs such as education, psychology, and reaction have "normal capacity participation." *See* Operations Webpage.

*Sixth*, Petrucelli argues that he has been rehabilitated, as demonstrated by his 22-year history without disciplinary reports and his post-sentencing work history. (Mot. 8-9). The defendant's institutional record, while encouraging, is an insufficient basis for granting him the extraordinary relief of a reduced sentence. *See, e.g.*, *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) ("'Rehabilitation . . . alone shall not be considered an extraordinary and compelling reason [justifying compassionate release].'") (quoting 28 U.S.C. § 994(t)) (emphasis in *Brooker*); *United States v. Saleh*, No. 93 Cr. 181 (WHP), 2020 WL 3839626, at *4 (S.D.N.Y. July 8, 2020) (denying relief while observing that "every inmate should strive for a productive institutional record while incarcerated because that is what is expected."); *United States v. Sanchez*, No. 08 Cr. 789 (RJS), 2020 WL 2571074, at *2 (S.D.N.Y. May 21, 2020) ("[T]he Court must deny th[e] [compassionate release] motion because it is based exclusively on [the defendant's] purported rehabilitation while incarcerated."); *United States v. Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *4 (S.D.N.Y. Feb. 24, 2020) (finding that "rehabilitation of the defendant" did not constitute "an extraordinary and compelling reason for compassionate release" (internal quotation marks omitted)).

### B. The Section 3553(a) Factors Counsel Against a Sentence Reduction

Even if Petrucelli could demonstrate extraordinary and compelling reasons, the 3553(a) factors counsel against compassionate release. *See, e.g., United States v. Monsanto Lopez*, No. 16 Cr. 643 (NRB), 2020 WL 2555305, at *1 (S.D.N.Y. May 20, 2020) (even if defendant could show extraordinary and compelling circumstances, Section 3553(a) factors required denial); *United States v. Garcia*, No. 16 Cr. 719 (RJS), 2020 WL 2539078, at *2 (S.D.N.Y. May 19,

2020) (same); *United States v. Reese*, No. 12 Cr. 629 (VM), 2020 WL 2554381, at *2 (S.D.N.Y. May 20, 2020) (same).

The 3553(a) factors compel consideration of the nature and circumstances of the offense and the history and characteristics of the defendant and require that the resulting sentence be sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from the defendant's further crimes. *See* 18 U.S.C. § 3553(a). The appropriate inquiry in this context is whether the relevant factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release"—to the extent there are any (and here, there are not)—and "whether compassionate release would undermine the goals of the original sentence." *United States v. Ebbers*, 432 F. Supp. 3d 421, 430-31 (S.D.N.Y. 2020). "Court[s] should be wary of using [a] motion [for compassionate release] to 'correct' the . . . original judgment or introduce unprincipled variance into the execution of duly-imposed sentences." *Id.* at 430.

As set forth above, the nature and circumstances of Petrucelli's offense were extremely serious. To maintain and increase his position in a violent gang, Petrucelli murdered Paul Cicero, then 17 years old, by stabbing him with a knife. Petrucelli killed Cicero in retaliation for an attack perpetrated by Cicero's cousin, for which Cicero was not even present. And Petrucelli later bragged that he had told Cicero, as he stabbed him: "Take this. Give it to your cousin."

Petrucelli's history and characteristics likewise counsel against a reduction in sentence. Although Petrucelli had no prior criminal convictions at the time he was sentenced, the PSR indicates that Petrucelli committed two other murders prior to murdering Cicero. In 1991, Petrucelli shot and killed Safet Kastrat in the Bronx, reportedly to avenge an earlier attack against the Tanglewood Boys. (PSR ¶ 48). In 1992, Petrucelli claimed to have killed 17-year-old James Tobin in retaliation for an attack against his brother. (PSR ¶ 49). Petrucelli's other criminal conduct included an attempted stabbing and multiple instances of burglary, robbery, theft, loansharking, gambling, and assault. (PSR ¶¶ 40-47, 51, 53, 55).

The Government respectfully submits that Petrucelli's life sentence reflects the seriousness of his offense—Petrucelli's third revenge killing, for which he appears neither to have accepted responsibility nor expressed remorse. Petrucelli's sentence also serves the purposes of deterrence and protection of the public, and appropriately reflects the fact that his murder of Paul Cicero was part of a pattern of violent activity engaged in by Petrucelli as a member of the Tanglewood Boys. Accordingly, consideration of the 3553(a) factors compels denial of this motion.[5]

---

[5] Cicero's mother has advised the Government that she intends to submit a letter, as well as letters from other family members, opposing a reduction of Petrucelli's sentence. If the Court is inclined to grant Petrucelli's motion, it should first provide an opportunity for Cicero's mother and other victims of Petrucelli's crimes to be heard. Under the Crime Victims' Rights Act, victims have "[t]he right to be reasonably heard at any public proceeding in the district court *involving release*, plea, *sentencing, or any parole proceeding*." 18 U.S.C. § 3771(a)(4) (emphases added); *see also* Fed. R. Crim. P. 60(a)(3). Although the Court may decide this motion without holding a "public proceeding," we believe that, at least in this circumstance, effectuating fully the purpose of the statute—particularly in light of its references to "release," "sentencing," and "parole

## IV. Conclusion

For these reasons, the Government respectfully submits that the Court should deny the Motion.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Henry Ross
Assistant United States Attorney
Tel: (212) 637-2442

cc: John Petrucelli, *pro se* (by certified mail)

---

proceedings"—counsels in favor of affording victims the ability to be heard. Furthermore, Section 3582(c) appears to contemplate considering the view of victims, because it authorizes the Court to grant compassionate release only "after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A) and (2). As the Court knows, § 3553(a) lists among sentencing factors: "the nature and circumstances of the offense," which often involve harm to victims, as well as "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(1), (7). Unless victims are permitted to make their views known, the Court will not have as full an understanding of the nature of the offense, the injury it caused to other people, and whether those people have been made whole.